# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10706

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2014

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

BRANDON SHAW,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-146-1

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

PER CURIAM:*

Brandon Shaw was arrested on the basis of a warrant that was discovered during a traffic stop. His car was impounded and inventoried, which produced a hand gun that led to Shaw's conviction for possession of a firearm by a felon. He appeals, arguing that the hand gun should have been suppressed because it was the fruit of an improper inventory search. We affirm the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10706

I.

Dallas police officers Daniel Torres and Mike Irwin initiated a traffic stop of a silver BMW they observed making a wide turn without using a turn signal. Torres observed the vehicle's driver, Appellant Brandon Shaw, "making furtive gestures, reaching towards the middle console of the vehicle." Torres instructed Shaw to exit the vehicle and performed a pat-down search of his person. Shaw informed Torres that he had unpaid parking tickets and Torres confirmed that there was an outstanding warrant for Shaw's arrest. Torres then called for backup and arrested Shaw.

After the arrest, Torres asked Shaw if he wanted to release the car to a passenger who was present at the scene. Shaw declined, which required that the car be impounded. Dallas Police Department ("DPD") procedures require officers to inventory the contents of impounded vehicles. Torres testified that when his backup was "in view" he began looking though areas of Shaw's car "where he could reach in" in order to "inventory it." At the time that Torres began the search, Shaw was already secured in the police vehicle.

Officers Trahan and Francis arrived to assist. While it is normally the responsibility of the arresting officer to inventory the contents of the impounded car and wait for a tow truck, Trahan offered to take Torres's place so that Torres could take Shaw back to the police station. Trahan testified this was common practice. He also testified that he was unsure whether Torres had done any type of inventory search of Shaw's car before he arrived, but that he believed his arrival had interrupted Torres's search. Trahan proceeded to perform an inventory search, which revealed a handgun between the driver's seat and the middle console. Trahan called Torres and Irwin back to the scene and they took possession of the gun. He then completed the vehicle receipt, but wrote Torres's name and badge number on the form rather than his own.

2

No. 13-10706

Trahan also removed an iPad and seven rounds of ammunition from the car but listed only clothing on the receipt.

Shaw moved to suppress the gun as the fruit of an illegal search. After an evidentiary hearing, the district court denied the motion. The district court found that two searches had occurred, one by Torres and one by Trahan, and that both were inventory searches. The district court also concluded that although there was "a failure to comply with the procedures," the failure was minimal and that the second search was not investigatory. Shaw entered a conditional plea, reserving the right to appeal the denial of the motion to suppress.

## II.

When reviewing the denial of a motion to suppress, this court reviews factual findings for clear error and conclusions of law *de novo*.[1] We review evidence and inferences from the facts in the light most favorable to the government as the prevailing party in the district court.[2] The government, however, must bear the burden of proving by a preponderance of the evidence that the search that produced the firearm was constitutional.[3] In reviewing the district court's ruling on a motion to suppress based on live testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or influenced by an incorrect view of the law.[4]

## III.

Shaw contends that the searches performed on the scene were neither proper inventory searches nor valid searches incident to arrest. As a result, he contends that the warrantless search that produced the firearm was

---

[1] *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

[2] *Id.*

[3] *Id.*

[4] *United States v. Muniz–Melchor*, 894 F.2d 1430, 1433 (5th Cir. 1990) (quoting *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir. 1984)).

unreasonable and a violation of the Fourth Amendment.  Shaw is correct that the searches in question would not qualify as valid searches incident to arrest because Shaw was secured in the police vehicle at the time the searches were performed.[5]  The Government, however, does not argue that the searches were valid searches incident to arrest, but rather that they were valid inventory searches.  "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage."[6]  But "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."[7]

Our review of the underlying factual record suggests that what occurred immediately following Shaw's arrest was a single inventory search, continued by Trahan once he took over from Torres.  But even if the searches are viewed as two separate events, no reversible error occurred.  The first search produced no evidence, and the government does not defend its validity.  The second search, meanwhile, is independently valid as an inventory search.  The Supreme Court has held that a "single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."[8]  Specifically, the Supreme Court's "decisions have always adhered to the requirement that inventories be conducted according to standardized criteria."[9]  Thus, this Court has held that an

---

[5] *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (limiting searches of vehicles incident to a recent occupant's arrest to situations in which the "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search").

[6] *Whren v. United States*, 517 U.S. 806, 812 n.1 (1996).

[7] *Florida v. Wells*, 495 U.S. 1, 4 (1990).

[8] *New York v. Belton*, 453 U.S. 454, 458 (1981); *United States v. Walker*, 931 F.2d 1066, 1068 (5th Cir. 1991).

[9] *Colorado v. Bertine*, 479 U.S. 367, 374 n.6 (1987).

inventory search "is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or dispute over lost or stolen property, and (3) protecting the police from danger."[10]  The procedures "must sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches."[11]

Shaw argues that the search was improper because the officers departed from inventory search procedures by: (1) failing to include some items on the inventory search worksheet, (2) using the wrong officer's name on the impound sheet, and (3) conducting more than one inventory search.  But under the specific circumstances presented here, including that the police department had custody of Shaw's vehicle pursuant to the impound process, any deviations from standard operating procedure were arguable and minor.  We are unable to say the district court erred in concluding that none of the deviations, if indeed there were any, contravened the core constitutional requirements of inventory searches.

IV.

For these reasons, we AFFIRM Shaw's conviction.

---

[10] *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2010) (citations and quotations omitted).

[11] *Id.* at 209-10 (citing *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994)).